# In the United States Court of Federal Claims

### No. 14-424L
### Filed: April 26, 2016

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

|  |  |
|---|---|
| **RICHARD K. PHIPPS, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Trails Act; Takings Claims; Cross-Motions for Partial Summary Judgment.** |
| **UNITED STATES,** | |
| **Defendant.** | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

**Elizabeth A. Gepford McCulley**, Steward, Wald & McCulley LLC, Kansas City, Missouri, for plaintiffs. With her were **Thomas S. Stewart**, Steward, Wald & McCulley LLC, and **J. Robert Sears**, Baker Sterchi Cowden & Rice, LLC, St. Louis, Missouri.

**Cullen Shearburn**, Trial Attorney, Environment & Natural Resources Division, Natural Resources Section, Department of Justice, Washington, D.C., for defendant. With him was **John C. Cruden**, Assistant Attorney General, Environment & Natural Resources Division, Department of Justice, Washington, D.C.

## O P I N I O N

<u>**HORN, J.**</u>

### FINDINGS OF FACT

Plaintiffs are landowners in the town of Farragut, Iowa, who allege that they are entitled to receive just compensation under the Fifth Amendment to the United States Constitution because the United States government effected a taking of their reversionary property interests by operation of the National Trails System Act, 16 U.S.C. § 1241, et. seq. (2012) (the Trails Act). Plaintiffs remaining in the case[1] include David and Paula Brownlee, Monte Jay Moyer, Rita Foster, Thomas A. Ingram and Amanda Hinds, Jerry Lee Nicholas, Jeremy T. and Jennifer L. McAllister, Virginia Farm Company, James and

---

[1] As the above-captioned case progressed through discovery, a number of plaintiffs included in the original complaint filed a motion of voluntarily dismissal from the above-captioned case, which the court granted. These plaintiffs include Robert L. Nicholas (Claim 3), Randall Ray and Melanie Ann Reafleng (Claim 6), Kimberley D. Doyle (Claim 7), Steven D. and Glenda K. Powers (Claims 10.A and 10.B), Marilyn A. Phipps (Claim 13.A), and William Shaw Trust (Claim 17). Additionally, one of the two claims involving plaintiff Richard K. Phipps was dismissed (Claim 13.C).

Gloria Dalrymple, Richard K., Roger and Lisa Phipps, C.S. Johnson Family Limited Partnership, Dorothy Walter Trust, and Timothy and Shawna Dreyer.

The Burlington Northern Santa Fe Railway Company (BNSF) previously operated a railroad that extended, in part, for approximately six miles between milepost 20.05 outside of Shenandoah, Iowa to milepost 26.0 outside of Farragut, Iowa. This 5.95-mile railroad corridor is at the center of the dispute in the above-captioned case. Plaintiffs allege that they each owned property adjoining the railroad corridor on which the railroad operated between milepost 20.05 and milepost 26.0, and that BNSF owned an easement for railroad purposes that laid across the property owned by plaintiffs. Plaintiffs allege that BNSF's easement for railroad purposes was extinguished when railroad operations on the railroad corridor ceased, and, as a result, plaintiffs' right to possess the land unencumbered by the easement should have reverted back to them. Plaintiffs further allege that defendant's actions under the Trails Act prevented such a reversion. Defendant challenges the adjacency of certain of these parcels to the railroad corridor and argues that BNSF actually held certain portions of the railroad corridor in fee simple, rather than as a mere easement. With regard to the remaining parcels at issue, however, the government concedes that these parcels adjoined portions of the railroad corridor over which BNSF held only easements for railroad purposes. Defendant states that it does not object to the entry of partial summary judgment finding it liable for takings with regard to these parcels, but argues that the takings were limited to easements for the preservation of rail service.

In February 2012, BNSF intended to abandon the 5.95-mile railroad corridor at issue and sought abandonment authorization from the United States Surface Transportation Board (STB). On February 21, 2012, BNSF submitted a Petition for Exemption to the STB seeking to exempt "BNSF's abandonment of a 5.95-mile rail line located in Page and Fremont Counties, Iowa" from "the prior approval requirements of 49 U.S.C. § 10903." In its petition, BNSF explained that "BNSF owns a 5.95-mile rail line between Shenandoah and Farragut in Page and Fremont Counties, Iowa," and that BNSF intended to "exercise the abandonment authority and convert the portion of the Line between Milepost 20.05 and Milepost 21.90 to industry track and sell the industry track" to the only customer on the line. BNSF proposed "to abandon its rail line located between Milepost 20.05 in Shenandoah and Milepost 26.0 in Farragut, in Page and Fremont Counties, Iowa." BNSF further stated that there "has been no overhead traffic on the Line for many years and no local traffic on the portion of the Line between Milepost 21.90 and Milepost 26.0 since at least 2007." In its petition, BNSF also asserted that "[t]he City of Farragut has expressed an interest in railbanking the remainder of the Line within its city limits." BNSF asserted in its petition that the rail line "does not contain federally granted rights of way."

In response to a public notice of the proposed abandonment, on March 14, 2012, the Iowa Natural Heritage Foundation (INHF) filed a request to the STB for the "issuance of a Public Use Condition as well as a Certificate or Notice of Interim Trail Use rather than an outright abandonment authorization between milepost 20.05 in Shenandoah and milepost 26.0 in Farragut." BNSF responded to the INHF's request and agreed "to negotiate with INHF for interim trail use/rail banking" as to the segment of the rail line

between mileposts 21.90 and 26.0. Thereafter, pursuant to its powers under the Trails Act, the STB issued a Notice of Interim Trail Use (NITU) on June 8, 2012 granting BNSF's request for an exemption, "subject to public use, trail use, environmental, and standard employee protective conditions." According to submissions from the parties, BSNF and the INHF have not completed negotiations on a trail use agreement, and the STB has extended the negotiation period to May 18, 2016. Continued negotiations for a trail use agreement, however, do not impact the parties' cross-motions presently before the court.

Plaintiffs David and Paula Brownlee allege that they owned fee title to land parcel number 420420013000000, including the portion of the property that extends to the centerline of the allegedly abandoned railroad right-of-way, when the alleged taking occurred. Plaintiffs David and Paula Brownlee's claim is identified as Claim 1 in this case.

Plaintiff Monte Jay Moyer alleges that he owned fee title to land parcel number 420420014000000, including the portion of the property that extends to the centerline of the allegedly abandoned railroad right-of-way, when the alleged taking occurred. Plaintiff Monte Jay Moyer's claim is identified as Claim 2 in this case.

Plaintiff Rita Foster alleges that she owned fee title to land parcel number 420420106000000, including the portion of the property that extends to the centerline of the allegedly abandoned railroad right-of-way, when the alleged taking occurred. Plaintiff Rita Foster's claim is identified as Claim 4 in this case.

Plaintiffs Thomas A. Ingram and Amanda Hinds allege that they owned fee title to land parcel number 420420107000000, including the portion of the property that extends to the centerline of the allegedly abandoned railroad right-of-way, when the alleged taking occurred. Plaintiffs Ingram and Hinds' claim is identified as Claim 5 in this case.

Plaintiff Jerry Lee Nicholas alleges that he owned fee title to land parcel number 420420185000000, including the portion of the property that extends to the centerline of the allegedly abandoned railroad right-of-way, when the alleged taking occurred. Plaintiff Nicholas' claim is identified as Claim 8 in this case.

Plaintiffs Jeremy T. and Jennifer L. McAllister allege that they owned fee title to land parcel number 420420184000000, including the portion of the property that extends to the centerline of the allegedly abandoned right-of-way, when the taking occurred. Plaintiffs Jeremy T. and Jennifer L. McAllister's claim is identified as Claim 9 in this case.

Separate from the aforementioned plaintiffs, the parties do not dispute that certain, additional plaintiffs, including Virginia Farm Company (Claim 11),[2] James and Gloria

---

[2] Plaintiff Virginia Farm Company owned fee title to land parcel number 050050100000000 at the time of the alleged taking.

Dalrymple (Claim 12),[3] Richard K., Roger and Lisa Phipps (Claim 13.B),[4] C.S. Johnson Family Limited Partnership (Claim 14),[5] Dorothy Walter Trust (Clam 15),[6] and Timothy and Shawna Dreyer (Claims 16.A and 16.B),[7] owned fee title to land parcels adjacent to the railroad corridor at the time of the alleged taking, June 8, 2012. The parties also do not dispute that, according to the original source deed, BNSF's predecessor-in-interest was conveyed an easement only for railroad purposes over the land parcels owned by these plaintiffs.

In contrast, the parties dispute whether the parcels owned by plaintiffs Monte Jay Moyer, Rita Foster, Thomas A. Ingram and Amanda Hinds, Jerry Lee Nicholas, and Jeremy T. and Jennifer L. McAllister, Claims 2, 4, 5, 8, and 9, respectively, adjoined the railroad corridor, such that, upon the cessation of the alleged easement for railroad purposes, the railroad corridor land would pass to the owners of these adjoining parcels pursuant to Iowa Code § 327G.77.[8] Defendant argues that these land parcels were

---

[3] Plaintiffs James and Gloria Dalrymple owned fee title to land parcel number 050050119000000 at the time of the alleged taking.

[4] Plaintiff Richard K. Phipps owned a life estate in land parcel number 050050071000000, including the property that extends to the centerline of the allegedly abandoned railroad right-of-way, when the alleged taking occurred. Plaintiffs Roger and Lisa Phipps owned the remainder interest in the same land parcel when the alleged taking occurred.

[5] Plaintiff C.S. Johnson Family Limited Partnership owned fee title to land parcel number 050050067000000 at the time of the alleged taking.

[6] Plaintiff Dorothy Walter Trust owned fee title to land parcel number 050050083000000 at the time of the alleged taking.

[7] Plaintiffs Timothy and Shawna Dreyer owned fee title to land parcel numbers 040040108000000 and 04004093000000 at the time of the alleged taking.

[8] The version of Iowa Code § 327G.77 which appears to have been in place at the time of the alleged takings in the above-captioned case, which is the same as the present version, states:

> 1. If a railroad easement is extinguished under section 327G.76, the property shall pass to the owners of the adjacent property at the time of abandonment. If there are different owners on either side, each owner will take to the center of the right-of-way. Section 614.24 which requires the filing of a verified claim does not apply to rights granted under this subsection.

> 2. An adjoining property owner may perfect title under subsection 1 by filing an affidavit of ownership with the county recorder. The affidavit shall include the name of the adjoining property owner, a description of the property, the present name of the railroad, the jurisdiction, docket number, and date of

separated from the railroad corridor by intervening roads and did not adjoin the railroad corridor. Specifically at issue are two roads in the town of Farragut, Iowa: Foote Street and Cox Street.[9] The parties disagree about whether Foote Street and Cox Street are owned in fee by the town of Farragut, separating the railroad corridor from the plaintiffs' land parcels, and, thereby, severing any alleged interests of plaintiffs in the railroad corridor.

With regard to Foote Street, the parties agree that Foote Street was depicted on the original plat map of the town of Farragut, which was incorporated in 1871. The original plat map shows Foote Street as adjacent to the land parcels that presently comprise Claims 1, 2, 4, and 5 and separating these land parcels from the railroad corridor. The parties agree that, subsequent to the original plat map, some portions of Foote Street have been vacated. The parties also agree that the current tax assessor's map of Farragut labels at least some of these vacated portions with the term "vac." The parties do not dispute that the portion of Foote Street adjacent to Claim 1, which is labelled "vac." on the tax assessor's map, was formally vacated by the town of Farragut. The warranty deed for Claim 1, dated September 26, 2006, grants plaintiffs David and Paula Brownlee fee simple to "Lots 16 and 17, and all that part of Foote Street lying adjacent to and abutting Lot 17, in the Town of Farragut, Fremont County, Iowa, according to the recorded Plat thereof." Thus, it is undisputed that Claim 1 includes a portion of Foote Street and runs adjacent to a segment of the railroad corridor.

Whether the portions of Foote Street that are adjacent to the land parcels comprising Claims 2, 4, and 5, which are not labelled "vac." on the tax assessor's map, have been formally vacated or abandoned, however, remains in dispute between the parties. Plaintiffs submitted photographs of the portions of Foote Street that are adjacent to Claims 2, 4, and 5 as evidence that these portions of Foote Street have been abandoned by the town of Farragut. The photographs depict a grass-covered area between these plaintiffs' land parcels and the railroad tracks, with no indication of the existence of a road. Unlike for Claim 1, the deeds owned by plaintiffs Monte Jay Moyer, Rita Foster, Thomas A. Ingram and Amanda Hinds for Claims 2, 4, and 5, respectively, do not indicate that their land parcels include any part of Foote Street. The deed for Claim 2, dated March 1, 2013, conveys to plaintiff Moyer "Lots Seventy-five (75), Seventy-six (76), and Seventy-seven (77) in the town of Farragut, Fremont County, Iowa." The current tax assessor's map of the town of Farragut depicts Lots 75, 76, and 77 as adjacent to, but not including, Foote Street. Claims 4 and 5 are comprised of separate portions of Lot

_____

order authorizing the railroad to terminate service, and the approximate date the track materials on the right-of-way were removed. A copy of the affidavit must be mailed by the landowner by certified mail to the railroad. The landowner shall pay taxes on the right-of-way from the date the affidavit is filed.

Iowa Code § 327G.77 (2011).

[9] The parties refer to this second road interchangeably as "Cox Avenue" and "Cox Street." The court refers to this road as Cox Street.

583 in the town of Farragut. The deed for Claim 4, dated July 13, 1994, conveys to plaintiff Foster:

> That part of Lot 583 in the Town of Farragut, Fremont County, Iowa, described as: commencing at a point 75 Feet West of the Northeast corner of said Lot 583, thence South parallel with the West line of said Lot to the South line thereof, thence Southwesterly on the South line of Lot 583 to the Southwest Corner of said Lot, thence North 150.80 Feet to the Northwest Corner of Lot 583, thence East 65 Feet to the place of beginning, said tract being also described in the chain of title as the West Half of Lot 583 in the Town of Farragut, Iowa, according to the recorded plat thereof.

The deed for Claim 5, dated September 21, 2010, conveys to plaintiffs Ingram and Hinds: "510 Washington, Farragut, IA 51639[.] The East 75 feet of Lot 583 in the City of Farragut, Fremont County, Iowa." The current tax assessor's map of the town of Farragut depicts Lot 583 as adjacent to, but not including, Foote Street.

With regard to Cox Street, the parties dispute whether Claims 8 and 9 adjoin the railroad corridor or whether Cox Street intervenes between these land parcels and the railroad corridor. The land parcels comprising Claims 8 and 9 are portions of Lot 13 in the plat map of U.D. Coy's First Addition to the Town of Farragut, which was recorded in 1872.[10] Neither Cox Street, nor any sort of road between Lot 13 and the railroad corridor, is depicted in the U.D. Coy's First Addition to the Town of Farragut plat map. Instead, the map shows a rectangular Lot 13 with an unlabeled triangular parcel immediately to its south, and then a long corridor labeled "Rail Road" directly south of this triangular parcel. By contrast, the current tax assessor's map of Farragut depicts Lot 13 (with notations apparently showing that it has been subdivided into several smaller parcels) as a trapezoid with three of its sides apparently in the same location as in the 1872 U.D. Coy's First Addition to the Town of Farragut plat map, but with at least a portion of the previously unlabeled triangular parcel to its south now incorporated into Lot 13. Additionally, the current tax assessor's map depicts a strip of land between the south edge of Lot 13 and the railroad corridor, which defendant alleges is the town of Farragut-owned Cox Street. This strip of land is not labeled or otherwise identified, and the map is not helpful in indicating who owns the strip of land. The parties do not dispute that photographs of the area, provided by plaintiffs, portray that a gravel road identified as Cox Street exists in

---

[10] Although not part of the original plat map of the town of Farragut, the area of land comprising U.D. Coy's First Addition currently falls within the incorporated boundaries of the town. A plat map of U.D. Coy's First Addition was submitted as an attachment to plaintiffs' reply brief in support of plaintiffs' motion for partial summary judgment. The map is titled "Plat of Coy's Addition to Farragut" and states that it was "Filed for Record May the 14th 1872." The deeds for Claims 8 and 9 refer to this map as depicting "U.D. Coy's First addition to the Town of Farragut Iowa" and "UD Coy's First Addition to the town of Farragut," respectively, and the defendant similarly describes "U.D. Coy's First Addition." Plaintiffs, in their reply brief, erroneously describe the map as depicting "U.D. Coy's First Edition to Farragut." The court refers to the document as the plat map of U.D. Coy's First Addition to the Town of Farragut.

this location between the railroad corridor and Claims 8 and 9. The parties also do not dispute that the legal descriptions recited in plaintiffs' ownership deeds for Claims 8 and 9 extend to the northern boundary of the railroad corridor, thus, including the land over which Cox Street runs. Plaintiff Nicholas' quit claim deed for Claim 8, dated February 18, 2000, describes his land parcel, as follows:

> Commencing at a point on the West line of said Lot 13 a distance of 175 feet South of the Northwest corner thereof, thence East paralleling the North line of said Lot 13 to the East line of said Lot and South down to the right-of-way of the C.B. & Q. Railroad Company, thence Southwesterly along the North line of said railroad right-of-way to its intersection with the West line of said Lot 13 and North upon the West line of said Lot 90 feet to the point of beginning.

Jeremy T. and Jennifer L. McAllister's deed for Claim 9, dated July 28, 2004, describes their land parcel, as follows:

> The West Half (W1/2) of the South 75 feet of the North 175 feet of Lot 13 in UD Coy's First Addition to the town of Farragut, Fremont County, Iowa, according to the recorded plat thereof AND

> The East Half (E1/2) of the South 75 feet of the North 175 feet of Lot 13 in UD Coy's First Addition to the town of Farragut, Fremont County, Iowa, according to the recorded plat thereof.

In addition to Cox Street, the current tax assessor's map of the town of Farragut depicts what defendant alleges, and plaintiffs dispute, is an additional parcel between Cox Street and the railroad corridor. The parcel appears to have been separated out from the northern-most quarter of the portion of the railroad corridor south of Claims 8 and 9 and is labelled "Pt. 16-07-253-002." Defendant refers to this possibly independent parcel as the ".002" Parcel. To the south of the .002 Parcel in the tax assessor's map is the railroad corridor, which is labelled "B.N. 002 501 R.R." The current tax assessor's map is the only evidence in the record suggesting the existence of a separate .002 Parcel.

In addition, the parties dispute whether the original deed for the portion of the railroad corridor that the parties agree is adjacent to the parcel held by David and Paula Brownlee, Claim 1, and the portion that plaintiffs allege is adjacent to the parcels held by plaintiffs Monte Jay Moyer, Rita Foster, and Thomas Ingram and Amanda Hinds, Claims 2, 4, and 5, respectively, conveyed an easement or fee to BNSF's predecessor-in-interest. In 1894, the following conveyance deed, recorded at Book C, page 544 (the C/544 deed), conveyed these portions of the railroad corridor to BNSF's predecessor-in-interest:

> In consideration of the payment of one Dollar I, John N. Dennison Trustee of Boston __ by C. E. Perkins of Burlington Iowa my attorney in __ hereby sell and convey to the Burlington and Missouri River Railroad Company the following described Real Estate in Fremont County Iowa to wit:

Commencing at the intersection of the center line of the main track of the Red Oak and Nebraska City Branch of the Burlington and Missouri River Railroad as now located and built and the north line of the southwest quarter of section seven (7) township sixty eight (68) North Range forty (40) west of the fifth (5th) principal meridian. Thence east to a point in said north line of fifty (50) feet distant at right angle from said center line. Thence southwesterly parallel to said center line and fifty (50) feet distant therefrom to the west line of section seven (7). Thence north to a point on said west line fifty (50) feet distant at right angles from said center line and on the northside thereof. Thence northwesterly parallel to said center line and fifty (50) feet distant therefrom eight hundred and seventy nine and six tenths (879 6/10) feet. Thence north one hundred and twelve and fife [sic] hundredths (112 5/11 [sic]) feet. Thence northeasterly parallel to said center line and one hundred and fifty (150) feet distant therefrom nine hundred and sixty three and six tenth (963 6/10) feet. Thence south one hundred and twelve and five hundredths (112 5/100) feet. Thence northeasterly parallel to said center line and fifty (50) feet distant therefrom to the said north line of the southwest quarter of section seven (7). Thence east along said north line to the place of beginning. Being the Depot grounds and Right of Way at the town of Farragut as shown on the recorded files of said town. And I warrant the title thereto against the lawful claims of all persons whomsoever. Claiming by __ under __. Witness my hand this 2nd day of March A.D. 1894[.]

Plaintiffs filed a complaint and an amended complaint in this court. In their amended complaint, the remaining plaintiffs allege that, absent the operation of the Trails Act, plaintiffs would have the exclusive right to physical ownership, possession and use of their property, free from any recreational trail use or future railroad. Plaintiffs further allege that, by operation of the Trails Act, defendant took plaintiffs' property without just compensation in violation of the Fifth Amendment to the United States Constitution. The parties have conducted discovery, reviewed the claims book documentation, and engaged in information exchanges with each other. Subsequently, both parties submitted cross-motions for partial summary judgment. The government submitted proposed findings of uncontroverted fact along with its cross-motion, to which plaintiffs did not initially respond. At oral argument, defendant argued, for the first time, that there is a genuine dispute of material fact with regard to Claims 8 and 9 based on the existence of the .002 Parcel, such that a finding of summary judgment on those claims, for either plaintiffs or defendant, would not be appropriate at this time. Briefing on the issue regarding Claims 8 and 9 concluded on April 8, 2016.

Also following oral argument, on March 23, 2016, based on representations made by the parties, the court issued an Order requiring plaintiffs to state whether they agreed or disagreed with the accuracy of defendant's proposed findings of uncontroverted fact and the exhibits attached thereto, in particular the original plat map of the town of Farragut and the current tax assessor's maps of the properties at issue. Plaintiffs' response stated that they agreed that the original plat map of the town of Farragut was, in fact, what defendant purported it to be. Plaintiffs agreed that, as to the current tax assessor's map

provided by defendant, "the original plat is overlaid with the current assessor's map," but denied that the tax assessor's map accurately depicted the current map of the town of Farragut on the grounds that "the assessor's map outlining parcels of land are [sic] not to be legally relied upon for legal descriptions."[11] The court's Order also required defendant to specifically state whether it agreed to the accuracy of three exhibits attached to plaintiffs' briefs: the pictures of Foote Street, the pictures of Cox Street, and the U.D. Coy's First Addition to the Town of Farragut plat map. Defendant's response to the court's Order stated that defendant did not contest the authenticity of plaintiffs' three exhibits, the pictures of Foote Street, the pictures of Cox Street, and the U.D. Coy's First Addition to the Town of Farragut plat map, but argued that the exhibits should not be considered as competent evidence because they fail to prove any facts of consequence to the case and, thus, lack relevancy.

## DISCUSSION

The parties have filed cross-motions for partial summary judgment pursuant to Rule 56 of the Rules of the Court of Federal Claims (RCFC) (2015). RCFC 56 is similar to Rule 56 of the Federal Rules of Civil Procedure in language and effect. Both rules provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); Fed. R. Civ. P. 56(a) (2016); see also Young v. United Parcel Serv., Inc., 135 S. Ct. 1338 (2015); Alabama v. North Carolina, 560 U.S. 330, 344 (2010); Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Biery v. United States, 753 F.3d 1279, 1286 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Ladd v. United States, 713 F.3d 648, 651 (Fed. Cir. 2013); Minkin v. Gibbons, P.C., 680 F.3d 1341, 1349 (Fed. Cir. 2012); Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1309-10 (Fed. Cir. 2012); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d 1365, 1372 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2012); Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1325 (Fed. Cir.), reh'g denied (Fed. Cir. 2010); Consol. Coal Co. v. United States, 615 F.3d 1378, 1380 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 131 S. Ct. 2990 (2011); 1st Home Liquidating Trust v. United States, 581 F.3d 1350, 1355 (Fed. Cir. 2009); Arko Exec. Servs., Inc. v. United States, 553 F.3d 1375, 1378 (Fed. Cir. 2009); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008), reh'g and reh'g en banc denied, 556 F.3d 1329 (Fed. Cir. 2009); Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2005); Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1370-71 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005); Mata v. United States, 114 Fed. Cl. 736, 744 (2014); Leggitte v. United States, 104 Fed. Cl. 315, 317 (2012); Arranaga v. United States, 103 Fed. Cl. 465,

---

[11] Plaintiffs also denied that another map of the town of Farragut that was included with defendant's proposed findings, and which plaintiffs allege was created by the defendant, accurately depicts the town of Farragut. The court does not rely on this allegedly defendant-created map in this opinion.

467-68 (2012); <u>Cohen v. United States</u>, 100 Fed. Cl. 461, 469 (2011); <u>Boensel v. United States</u>, 99 Fed. Cl. 607, 610 (2011).

A fact is material if it will make a difference in the result of a case under the governing law. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248; <u>see also Marriott Int'l Resorts, L.P. v. United States</u>, 586 F.3d 962, 968 (Fed. Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248); <u>Mata v. United States</u>, 114 Fed. Cl. at 744; <u>Arranaga v. United States</u>, 103 Fed. Cl. at 467-68; <u>Thompson v. United States</u>, 101 Fed. Cl. 416, 426 (2011); <u>Cohen v. United States</u>, 100 Fed. Cl. at 469. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 247-48; <u>see also Scott v. Harris</u>, 550 U.S. 372, 380 (2007); <u>Monon Corp. v. Stoughton Trailers, Inc.</u>, 239 F.3d 1253, 1257 (Fed. Cir. 2001); <u>Gorski v. United States</u>, 104 Fed. Cl. 605, 609 (2012); <u>Walker v. United States</u>, 79 Fed. Cl. 685, 692 (2008); <u>Curtis v. United States</u>, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), <u>cert. denied</u>, 361 U.S. 843 (1959), <u>reh'g denied</u>, 361 U.S. 941 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249; <u>see, e.g., Schlup v. Delo</u>, 513 U.S. 298, 332 (1995); <u>Ford Motor Co. v. United States</u>, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); <u>TigerSwan, Inc. v. United States</u>, 118 Fed. Cl. 447, 451 (2014); <u>Dana R. Hodges Trust v. United States</u>, 111 Fed. Cl. 452, 455 (2013); <u>Cohen v. United States</u>, 100 Fed. Cl. at 469-70; <u>Boensel v. United States</u>, 99 Fed. Cl. at 611; <u>Macy Elevator, Inc. v. United States</u>, 97 Fed. Cl. 708, 717 (2011); <u>Dick Pacific/GHEMM, JV ex rel. W.A. Botting Co. v. United States</u>, 87 Fed. Cl. 113, 126 (2009); <u>Johnson v. United States</u>, 49 Fed. Cl. 648, 651 (2001), <u>aff'd</u>, 52 F. App'x 507 (Fed. Cir. 2002), <u>published at</u> 317 F.3d 1331 (Fed. Cir. 2003). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 250-52; <u>Jay v. Sec'y of Dep't of Health and Human Servs.</u>, 998 F.2d 979, 982 (Fed. Cir.), <u>reh'g denied and en banc suggestion declined</u> (Fed. Cir. 1993); <u>Leggitte v. United States</u>, 104 Fed. Cl. at 316. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. <u>See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc.</u>, 674 F.3d at 1372; <u>Marriott Int'l Resorts, L.P. v. United States</u>, 586 F.3d at 968; <u>Am. Seating Co. v. USSC Grp., Inc.</u>, 514 F.3d 1262, 1266 (Fed. Cir.), <u>reh'g en banc denied</u> (Fed. Cir. 2008); <u>Rothe Dev. Corp. v. U.S. Dep't of Def.</u>, 262 F.3d 1306, 1316 (Fed. Cir. 2001); <u>Hall v. Aqua Queen Mfg., Inc.</u>, 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). In such cases, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

In appropriate cases, summary judgment:

saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is

useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

Dehne v. United States, 23 Cl. Ct. 606, 614-15 (1991) (quoting Pure Gold, Inc. v. Syntex, (U.S.A.) Inc., 739 F.2d 624, 626 (Fed. Cir. 1984)), vacated on other grounds, 970 F.2d 890 (Fed. Cir. 1992) (citation omitted); see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 806 (Fed. Cir. 1999) ("The purpose of summary judgment is not to deprive a litigant of a trial, but to avoid an unnecessary trial when only one outcome can ensue."); Metric Constr. Co., Inc. v. United States, 73 Fed. Cl. 611, 612 (2006).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1244 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 555 U.S. 812 (2008); Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1109 (2002); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999); TigerSwan, Inc. v. United States, 118 Fed. Cl. at 451; Stephan v. United States, 117 Fed. Cl. 68, 70 (2014); Gonzales-McCaulley Inv. Group, Inc. v. United States, 101 Fed. Cl. 623, 629 (2011). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. See Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Yant v. United States, 588 F.3d 1369, 1371 (Fed. Cir. 2009), cert. denied, 131 S. Ct. 69 (2010); Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co., 272 F.3d 1365, 1369 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 293 F.3d 1364 (Fed. Cir. 2002), cert. denied, 539 U.S. 957 (2003); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1998); see also Am. Pelagic Co. v. United States, 379 F.3d at 1371 (citing Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1345-46 (Fed. Cir. 2000)); Dana R. Hodges Trust v. United States, 111 Fed. Cl. at 455; Boensel v. United States, 99 Fed. Cl. at 611 ("'The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 255) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Casitas Mun. Water Dist. v. United States, 543 F.3d at 1283; Lathan Co. Inc. v. United States, 20 Cl. Ct. 122, 125 (1990))); see also Am. Seating Co. v. USSC Grp., Inc., 514 F.3d at 1266-67; Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807. "However, once a moving party satisfies its initial burden, mere allegations of a genuine issue of material fact without supporting evidence will not prevent entry of summary judgment." Republic Sav. Bank, F.S.B. v. United States, 584 F.3d 1369, 1374 (Fed. Cir. 2009); see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48.

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving

party can demonstrate that there is an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Riley & Ephriam Constr. Co. v. United States, 408 F.3d 1369, 1371 (Fed. Cir. 2005); Crown Operations Int'l Ltd. v. Solutia Inc., 289 F.3d 1367, 1377 (Fed. Cir.), reh'g denied (Fed. Cir. 2002); Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc., 109 F.3d 739, 741 (Fed. Cir.) (quoting Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994), reh'g denied and en banc suggestion declined (Fed. Cir. 1995)), reh'g denied and en banc suggestion declined (Fed. Cir. 1997); Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1569 (Fed. Cir. 1997); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; RQ Squared, LLC v. United States, No. 12-527C, 2015 WL 170230, at *6 (Fed. Cl. Jan. 14, 2015). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. at 322; see also Wavetronix LLC v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1354 (Fed. Cir. 2009); Long Island Sav. Bank, FSB v. United States, 503 F.3d at 1244; Florida Power & Light Co. v. United States, 375 F.3d 1119, 1124 (Fed. Cir. 2004); Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1207 (Fed. Cir. 2001); Am. Airlines, Inc. v. United States, 204 F.3d 1103, 1108 (Fed. Cir. 2000); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; Rasmuson v. United States, 109 Fed. Cl. 267, 271 (2013). However, "a non-movant is required to provide opposing evidence under Rule 56(e) only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1369 (Fed. Cir. 2006).

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case, and it does not follow that summary judgment should be granted to one side or the other. See Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)); see also Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968–69 (Fed. Cir. 2009); B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001); Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000); Chevron USA, Inc. v. Cayetano, 224 F.3d 1030, 1037 n.5 (9th Cir. 2000), cert. denied, 532 U.S. 942 (2001); Bubble Room, Inc. v. United States, 159 F.3d 553, 561 (Fed. Cir. 1998) ("The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other."), reh'g denied and en banc suggestion declined (Fed. Cir. 1999); Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 2 (1st Cir. 1998); Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997); LewRon Television, Inc. v. D.H. Overmyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968), cert. denied, 393 U.S. 1083 (1969); Rogers v. United States, 90 Fed. Cl. 418, 427 (2009), subsequent determination, 93 Fed. Cl. 607 (2010); Consol. Coal Co. v. United States, 86 Fed. Cl. 384, 387 (2009), aff'd, 615 F.3d 1378, (Fed. Cir.), and reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 131 S. Ct. 2990 (2011); St. Christopher Assocs., L.P. v. United States, 75 Fed. Cl. 1, 8 (2006), aff'd, 511 F.3d 1376 (Fed. Cir. 2008); Reading & Bates Corp. v. United States, 40 Fed. Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose

motion is under consideration, or, otherwise stated, in favor of the non-moving party. See First Commerce Corp. v. United States, 335 F.3d 1373, 1379 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); see also DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1322 (Fed. Cir. 2001); Gart v. Logitech, Inc., 254 F.3d 1334, 1338–39 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1114 (2002); Oswalt v. United States, 85 Fed. Cl. 153, 158 (2008); Telenor Satellite Servs., Inc. v. United States, 71 Fed. Cl. 114, 119 (2006).

Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other necessarily is justified. See B.F. Goodrich Co. v. United States Filter Corp., 245 F.3d at 593; Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d at 1148; Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d at 2; Rogers v. United States, 90 Fed. Cl. at 427; Reading & Bates Corp. v. United States, 40 Fed. Cl. at 748.

"Questions of law are particularly appropriate for summary judgment." Oenga v. United States, 91 Fed. Cl. 629, 634 (2010) (citing Dana Corp. v. United States, 174 F.3d 1344, 1347 (Fed. Cir. 1999) ("Summary judgment was appropriate here [in Dana Corp.] because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law. Moreover, on each issue one party or the other is entitled to judgment as a matter of law.")); see also Santa Fe Pac. R.R. v. United States, 294 F.3d 1336, 1340 (Fed. Cir. 2002) ("Issues of statutory interpretation and other matters of law may be decided on motion for summary judgment.").

In the present case, plaintiffs allege that defendant effected a taking under the Fifth Amendment to the United States Constitution through operation of the Trails Act. The Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. The purpose of this Fifth Amendment provision is to prevent the government from "'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" Palazzolo v. Rhode Island, 533 U.S. 606, 618 (2001) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960), abrogated on other grounds by Lingle v. Chevron U.S.A. Inc., 544 U.S. 528 (2005), recognized by Hageland Aviation Servs., Inc. v. Harms, 210 P.3d 444 (Alaska 2009); see also Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 123-24, reh'g denied, 439 U.S. 883 (1978); Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536 (2005); E. Enters. v. Apfel, 524 U.S. 498, 522 (1998); Rose Acre Farm, Inc. v. United States, 559 F.3d 1260, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2009), cert. denied, 130 S. Ct. 1501 (2010); Janowsky v. United States, 133 F.3d 888, 892 (Fed. Cir. 1998); Res. Invs., Inc. v. United States, 85 Fed. Cl. 447, 469-70 (2009); Pumpelly v. Green Bay & Miss. Canal Co., 80 U.S. (13 Wall.) 166, 179 (1871) (citing to principles which establish that "private property may be taken for public uses when public necessity or utility requires" and that there is a "clear principle of natural equity that the individual whose property is thus sacrificed must be indemnified").

Therefore, "a claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." E. Enters. v. Apfel, 524 U.S. at 520 (citing Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016-19 (1984)); see also Acceptance Ins. Cos. v. United States, 503 F.3d 1328, 1336 (Fed. Cir. 2007); Morris v. United States, 392 F.3d 1372, 1375 (Fed. Cir. 2004) ("Absent an express statutory grant of jurisdiction to the contrary, the Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000."). The United States Supreme Court has declared: "If there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the [United States Court of Federal Claims] to hear and determine." Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 12 (1990) (Preseault I) (quoting United States v. Causby, 328 U.S. 256, 267 (1946)); see also Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1368 (Fed. Cir. 2005); Narramore v. United States, 960 F.2d 1048, 1052 (Fed. Cir. 1992); Perry v. United States, 28 Fed. Cl. 82, 84 (1993).

To succeed under the Fifth Amendment Takings Clause, a plaintiff must show that the government took a private property interest for public use without just compensation. See Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004), cert. denied, 546 U.S. 811 (2005); Arbelaez v. United States, 94 Fed. Cl. 753, 762 (2010); Gahagan v. United States, 72 Fed. Cl. 157, 162 (2006). "The issue of whether a taking has occurred is a question of law based on factual underpinnings." Huntleigh USA Corp. v. United States, 525 F.3d 1370, 1377-78 (Fed. Cir.), cert. denied, 555 U.S. 1045 (2008). The government must be operating in its sovereign rather than in its proprietary capacity when it initiates a taking. See St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1385 (Fed. Cir. 2008).

The United States Court of Appeals for the Federal Circuit has established a two-part test to determine whether government actions amount to a taking of private property under the Fifth Amendment. See Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011); Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir.) (citing M & J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995)), reh'g denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005). A court first determines whether a plaintiff possesses a cognizable property interest in the subject of the alleged takings. Then, the court must determine whether the government action is a "'compensable taking of that property interest.'" Huntleigh USA Corp v. United States, 525 F.3d at 1377 (quoting Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d at 1372).

To establish a taking, a plaintiff must have a legally cognizable property interest, such as the right of possession, use, or disposal of the property. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) (citing United States v. Gen. Motors Corp., 323 U.S. 373 (1945)); CRV Enters., Inc. v. United States, 626 F.3d 1241, 1249 (Fed. Cir. 2010), cert. denied, 563 U.S. 989 (2011); Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366, 1374-75 (Fed. Cir.), reh'g denied and en banc suggestion denied (Fed. Cir. 2000), cert. denied, 532 U.S. 941 (2001). "'It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.'" Am.

Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (quoting Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001), cert. denied, 353 U.S. 1077 (2002) and citing Cavin v. United States, 956 F.2d 1131, 1134 (Fed. Cir. 1992)). Therefore, "[i]f the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts [sic] task is at an end." Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372 (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1352 (Fed. Cir. 2003) and M & J Coal Co. v. United States, 47 F.3d at 1154). The court does not address the second step "without first identifying a cognizable property interest." Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir.) (citing Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1381 and Conti v. United States, 291 F.3d 1334, 1340 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003)), reh'g denied and reh'g en banc denied (Fed. Cir. 2005). Only if there is to be a next step, "'after having identified a valid property interest, the court must determine whether the governmental action at issue amounted to a compensable taking of that property interest.'" Huntleigh USA Corp. v. United States, 525 F.3d at 1378 (quoting Am. Pelagic Fishing Co. v. United States, 379 F.3d at 1372).

The STB has authority to regulate most railroad lines in the United States. See 49 U.S.C. § 702 (2012). A railroad seeking to abandon any part of its railroad line must either (1) file an application to abandon or (2) file a notice of exemption to abandon the line. See 49 U.S.C. § 10903 (2012); see also 49 C.F.R. § 1152.50 (2016). "If the STB approves a standard abandonment application or grants an exemption and the railroad ceases operation, the STB relinquishes jurisdiction over the abandoned railroad right-of-way and state law reversionary property interests, if any, take effect." Caldwell v. United States, 391 F.3d 1226, 1228-29 (Fed. Cir. 2004) (citing Preseault I, 494 U.S. at 6-8), reh'g en banc denied (Fed. Cir.), cert. denied, 546 U.S. 826 (2005).

"The Trails Act is designed to preserve railroad rights-of-way by converting them into recreational trails." Bywaters v. United States, 670 F.3d 1221, 1225 (Fed. Cir. 2012). By operation of the Trails Act, the STB may issue a NITU, "suspending exemption proceedings for 180 days to allow a third party to enter into an agreement with the railroad to use the right-of-way as a recreational trail." Barclay v. United States, 443 F.3d 1368, 1371 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), cert. denied, 846 U.S. 1209 (2007). Section 8(d) of the Trails Act, codified at 16 U.S.C. § 1247(d), "allows a railroad to negotiate with a state, municipal, or private group ('the trail operator') to assume financial responsibility for operating the railroad right of way as a recreational trail." See Bright v. United States, 603 F.3d 1273, 1275 (Fed. Cir.) (citing Caldwell v. United States, 391 F.3d at 1229), reh'g and reh'g en banc denied (Fed. Cir. 2010). If the railroad and an authorized trail provider[12] reach an agreement, the NITU extends indefinitely, and the corridor is railbanked, with interim trail use permitted. See 49 C.F.R. § 1152.29(d)(1)-(2) (2016) ("The NITU will indicate that interim trail use is subject to future restoration of rail

---

[12] The Trails Act indicates that a trail provider may be "a State, political subdivision, or qualified private organization [that] is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way." 16 U.S.C. § 1247(d).

service . . . . Additionally, the NITU will provide that if the sponsor intends to terminate interim trail use on all or any portion of the right-of-way covered by the interim trail use agreement, it must send the [STB] a copy of the NITU and request that it be vacated on a specific date."); see also Biery v. United States, 753 F.3d 1279, 1285 (Fed. Cir. 2014) ("If the railroad and the [Surface Transportation] Board reach agreement, the land underlying the railway may be transferred to a trail operator (e.g., state, political subdivision, or qualified private organization) for interim trail use." (citing Citizens Against Rails–to–Trails v. Surface Transp. Bd., 267 F.3d 1144, 1149 (D.C. Cir. 2001))); Caldwell v. United States, 57 Fed. Cl. 193, 194 (2003) ("The term railbanking refers to the 'preservation of railroad corridor for future rail use,' while making the corridor available for other activities." (quoting Neb. Trails Council v. Surface Transp. Bd., 120 F.3d 901, 903 n.1 (8th Cir. 1997))), aff'd, 391 F.3d 1226 (Fed. Cir. 2004), reh'g en banc denied (Fed. Cir.), cert. denied, 546 U.S. 826 (2005). When the NITU extends indefinitely and the corridor is railbanked, the STB retains jurisdiction and abandonment of the railroad corridor is blocked. See 16 U.S.C. § 1247(d) ("[I]n the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."); see also Rasmuson v. United States, 807 F.3d 1343, 1344 (Fed. Cir. 2015) ("NITUs 'preserve established railroad rights-of-way for future reactivation of rail service' and permit the railroad operator to cease operation without legally abandoning any 'rights-of-way for railroad purposes.'" (quoting 16 U.S.C. § 1247(d))).

As described by the United States Court of Appeals for the Federal Circuit:

Thus, section 8(d) of the Trails Act prevents the operation of state laws that would otherwise come into effect upon abandonment-property laws that would "result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners." Rail Abandonments-Use of Rights-of-Way as Trails, Ex Parte No. 274 (Sub-No. 13), 2 I.C.C. 2d 591, 1986 WL 68617 (1986). A Fifth Amendment taking occurs if the original easement granted to the railroad under state property law is not broad enough to encompass a recreational trail. See Preseault II, 100 F.3d at 1552; see also Toews [v. United States], 376 F.3d at 1376.

Caldwell v. United States, 391 F.3d at 1229; see also Rogers v. United States, 814 F.3d 1299, 1303 (Fed. Cir. 2015) ("As we have previously explained in other rails-to-trails cases, a taking, if any, occurs when, pursuant to the Trails Act, the STB issues a Notice of Interim Trail Use ('NITU') to suspend the abandonment of the rail line by a railroad and preserve it for future active railroad use." (citing Barclay v. United States, 443 F.3d at 1373)).

The Federal Circuit has established a three-part inquiry to determine takings liability in cases involving the conversion of railroad rights of way to a recreational trail by means of 16 U.S.C. § 1247(d) of the Trails Act, as follows:

> (1) who owned the strips of land involved, specifically did the Railroad . . . acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

Preseault v. United States, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (Preseault II). Phrased differently, the Federal Circuit has also indicated:

> the determinative issues for takings liability are (1) who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate; (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement).

Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing Preseault II, 100 F.3d at 1533).

According to the United States Court of Appeals for the Federal Circuit, "[i]t is settled law that a Fifth Amendment taking occurs in Rails-to-Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." Ladd v. United States, 630 F.3d 1015, 1019 (Fed. Cir. 2010), reh'g and reh'g en banc denied, 646 F.3d 910 (Fed. Cir. 2011); see also Ellamae Phillips Co. v. United States, 564 F.3d at 1373. "It is the law-created right to own private property, recognized and enforced by the Constitution, legislation, and common law, that gives the owner an historically rooted expectation of compensation." Preseault II, 100 F.3d at 1540. The Federal Circuit in Preseault II also indicated "that power includes the power to preempt state-created property rights, including the rights to possession of property when railroad easements terminate. As Justice O'Connor succinctly pointed out in her concurring opinion in Preseault I, however, having and exercising the power of preemption is one thing; being free of the Constitutional obligation to pay just compensation for the state-created rights thus destroyed is another." Id. at 1537 (citing Preseault I, 494 U.S. at 22).

To determine the nature of the property interest at issue, the court looks to state law. The United States Court of Appeals for the Federal Circuit, interpreting a takings claim for a railroad right of way, stated that, "state law generally creates the property interest in a railroad right-of-way." Barclay v. United States, 443 F.3d at 1374 (citing Preseault I, 494 U.S. at 8, 16). In a footnote on the same page, the court repeated, "[i]n

Toews v. United States, 376 F.3d 1371 (Fed. Cir. 2004), we reiterated that state law controls the basic issue of whether trail use is beyond the scope of the right-of-way." Barclay v. United States, 443 F.3d at 1374 n.4. "The nature of the interest conveyed is determined according to the law of the state where the conveyance occurred. 'State law creates and defines the scope of the reversionary or other real property interests affected by the ICC's [Interstate Commerce Commission] action pursuant to Section 208 of the National Trails System Act Amendments of 1983, 16 U.S.C. §1247(d).'" Chevy Chase Land Co. of Montgomery Cnty. v. United States, 37 Fed. Cl. 545, 565 (1997) (quoting Preseault I, 494 U.S. at 20 (O'Connor, J., concurring) (citing Ruckelshaus v. Monsanto Co., 467 U.S. at 1001)), aff'd, 230 F.3d 1375 (Fed. Cir. 1999), reh'g and reh'g en banc denied (Fed. Cir.), cert. denied, 531 U.S. 957 (2000); see also Whispell Foreign Cars, Inc. v. United States, 97 Fed. Cl. 324, 331 ("Whether an individual has a compensable private property interest is determined by state law."), amended after recons. in part, 100 Fed. Cl. 529 (2011).

While Chevy Chase Land Co. of Montgomery County v. United States and Preseault I specifically addressed the application of state law to be applied in rails to trails cases, the United States Supreme Court has made similar pronouncements about state law governing how determinations are made regarding property conveyances. For example, in Ruckelshaus v. Monsanto Co., 467 U.S. at 1001, the Supreme Court stated, "we are mindful of the basic axiom that '"[p]roperty interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."'" (quoting Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972))) (omission in original). In Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co., 429 U.S. 363 (1977), the United States Supreme Court stated that, "[u]nder our federal system, property ownership is not governed by a general federal law, but rather by the laws of the several States." Id. at 378; see also Davies Warehouse Co. v. Bowles, 321 U.S. 144, 155 (1944) ("The great body of law in this country which controls acquisition, transmission, and transfer of property, and defines the rights of its owners in relation to the state or to private parties, is found in the statutes and decisions of the state."). The United States Court of Appeals for the Federal Circuit also has directed that state law determines whether trail use exceeds the scope of the easement. See generally Toews v. United States, 376 F.3d 1371; see also Preseault II, 100 F.3d at 1541-42.

Plaintiffs in the case currently before this court seek partial summary judgment in their favor for the thirteen remaining claims. In particular, plaintiffs seek findings that the federal government took plaintiffs' property by operation of the Trails Act and that plaintiffs are entitled to just compensation pursuant to the Fifth Amendment to the United States Constitution. Defendant seeks partial summary judgment in its favor with regard to two partially overlapping groups of claims, on independent grounds: those claims, which defendant alleges include Claims 2, 4, 5, 8, and 9, that do not adjoin any segment of the BNSF railroad corridor; and those claims, which defendant alleges include Claims 1, 2, 4, and 5, that adjoin segments of the railroad corridor that BNSF owned in fee simple. With regard to plaintiffs' Claims that adjoin portions of the railroad corridor in which BNSF allegedly held only an easement for railroad purposes, which the parties agree includes

at least Claims 11, 12, 13.B, 14, 15, 16.A, and 16.B, defendant does not contest that the issuance of the NITU by the STB amounted to a taking. Defendant, however, seeks a finding that what was taken amounted only to easements for railroad purposes. The parties, thus, dispute three issues: whether Claims 2, 4, 5, 8, and 9 were adjacent to the railroad corridor; whether BNSF held the portion of the railroad corridor adjacent to Claims 1, 2, 4, and 5 in fee simple or merely as an easement for railroad purposes; and the nature of the property interest defendant took from those plaintiffs whose claims were adjacent to portions of the railroad corridor in which BNSF held only an easement for railroad purposes.

## Adjacency of Claims 2, 4, 5, 8, and 9 to the Railroad Corridor

Initially, the court examines whether Claims 2, 4, 5, 8, and 9 are adjacent to the railroad corridor. With regard to Claims 2, 4, and 5, defendant argues that Foote Street, which is depicted on the original plat map of the town of Farragut, and, thus, according to defendant, is owned in fee simple by the town of Farragut, separates the plaintiffs' property from the railroad corridor. With regard to Claims 8 and 9, defendant argues that there remains at least a material issue of fact as to adjacency to the railroad corridor because of "discrepancies" between the descriptions contained in the deeds for these claims and the current tax assessor's map of the town of Farragut. In particular, defendant argues that the tax assessor's map shows two separate strips of land separating Claims 8 and 9 and the railroad corridor: Cox Street and the alleged .002 Parcel.

Under Iowa law, streets listed on the original recorded plat map of a city at the time of its incorporation are held by the city in fee simple. See Town of Kenwood Park v. Leonard, 158 N.W. 655, 658 (1916) ("Section 917, c. 13, tit. 5, of the Code of 1897, in so far as it provides that the recording of plats, such as we are dealing with, is equivalent to a deed in fee simple of such portion of the premises platted as is set apart for streets or other public use, evidently relates to streets in cities and towns, and not to streets in unincorporated villages."); see also City of Marquette v. Gaede, 672 N.W.2d 829, 833-34 (Iowa 2003) ("We have recognized that the recording of a plat, followed by the subsequent incorporation of the platted area as a city, is the equivalent of a deed in fee simple to the city of the land set apart in the plat for streets or other public uses." (citing Fencl v. City of Harpers Ferry, 620 N.W.2d 808, 812 (Iowa 2000); Kelroy v. City of Clear Lake, 5 N.W.2d 12, 16 (Iowa 1942); Inc. Town of Ackley v. Cent. States Elec. Co., 220 N.W. 315, 316 (Iowa 1928))). The city's ownership interest is not lessened by its failure to improve or open the platted street, even if it fails to do so for a significant amount of time. See Fencl v. City of Harpers Ferry, 620 N.W.2d at 810, 815 (finding that city retained ownership of an alley almost 150 years after the 1854 plat laying out the alley was recorded, even though the platted alley had never actually been used as an alley). Defendant provided the court with the original plat map of the town of Farragut. The map depicts a street labeled Foote Street in the same location as Foote Street is located on the current tax assessor's map of Farragut and as adjoining the parcels on which Claims 1, 2, 4, and 5 are located. Plaintiffs appear not to contest that Foote Street was part of

the original plat map of the town of Farragut and, thus, owned in fee simple by the town.[13] The town of Farragut, therefore, owned Foote Street in fee simple from at least the time of Farragut's incorporation in 1871.

With regard to Claims 2, 4, and 5, although plaintiffs apparently concede that the town of Farragut once owned Foote Street, they argue that the town has since abandoned the portions of Foote Street adjacent to Claims 2, 4, and 5, and, in fact, has formally vacated the portion of Foote Street adjacent to Claim 2. According to plaintiffs, the abandonment and/or vacation of the portions of Foote Street adjacent to Claims 2, 4, and 5 means that the relevant portions of Foote Street presently are covered by only "**Mere Easement[s]**" and, thus, do not function as intervening parcels between the railroad corridor and plaintiffs' properties. (emphasis in original). With regard to Claims 8 and 9, plaintiffs argue that there is no evidence that Farragut ever owned Cox Street, that it was, at best, a mere easement, and that, even if Farragut did own Cox Street, Cox Street would merely bisect plaintiffs' parcels, which would still be adjacent to the corridor.

Under Iowa law, "an established highway may be abandoned by the public and its rights therein lost." Sioux City v. Johnson, 165 N.W.2d 762, 766 (Iowa 1969) (citing Kelroy v. City of Clear Lake, 5 N.W.2d 12; Robinson v. Bd. of Supervisors, 269 N.W. 921, 923 (Iowa 1936); Lucas v. Payne, 120 N.W. 59, 61 (Iowa 1909)). "There is a presumption, however, that once a highway is shown to exist, it continues to exist, and any abandonment must be proven by clear and satisfactory evidence." Allamakee Cty. v. Collins Trust, 599 N.W.2d 448, 451 (Iowa 1999) (citing Sterlane v. Fleming, 18 N.W.2d 159, 161 (Iowa 1945); 39 Am. Jur. 2d Highways, Streets, & Bridges § 158, at 692 (1999)). "In order to prove abandonment, actual acts of relinquishment accompanied by an intention to abandon must be shown." Id. "Nonuse is not enough to establish abandonment," and "[o]bstructions, encroachments, or the failure to keep a road in repair do not necessarily result in abandonment." Id. (citing Sterlane v. Fleming, 18 N.W.2d at 162; see also Sioux City v. Johnson, 165 N.W.2d at 766 ("Mere nonuser, of course, is not sufficient to establish relinquishment of title or ownership.")). The photographs that plaintiffs provide as evidence of abandonment appear to show that the portions of Foote Street at issue are covered in grass, with no indication of any physical road, whether paved, gravel, or dirt. Farragut's apparent failure to improve the portions of Foote Street at issue, however, does not establish abandonment. Stecklein v. City of Cascade, 693 N.W.2d 335, 340-41 (Iowa 2005) ("[T]he failure of a small town to improve a street 'before public convenience requires it, will not amount to either an abandonment or an estoppel.'" (quoting Kuehl v. Town of Bettendorf, 161 N.W. 28, 31 (Iowa 1917))); see also Wolfe v. Kemler, 293 N.W. 322, 325 (Iowa 1940) (noting that not "'all the streets shown upon the plat will be immediately opened and used. It is generally known and understood that a large portion of them will not be required for use for many years after the town is laid

---

[13] While plaintiffs do not explicitly address the issue of whether the town of Farragut ever owned Foote Street in fee prior to this alleged abandonment, in their motion for partial summary judgment, plaintiffs concede that, under Iowa law, another street in Farragut, Dupont Street, is owned by the town of Farragut in fee because it was part of the original plat map of the town of Farragut. Foote Street, like Dupont Street, is included on the original plat map of the town of Farragut.

out . . . .'" (quoting Meier v. Portland Cable Ry. Co., 19 P. 610, 614 (Or. 1888))). Similarly, in the case before this court, the grass and lack of improvements to the platted location of Foote Street demonstrated by the photographs provided to this court by plaintiffs are, at best, evidence of mere disuse and, thus, insufficient to establish an intention to abandon Foote Street by Farragut. See Stecklein v. City of Cascade, 693 N.W.2d at 337, 341 (finding no evidence of an intent to abandon platted street by city where the city had failed to open street for 120 years after it was platted, the platted street was enclosed, along with an adjacent private property, in a thirty to forty-year-old fence, additional fences crossed the platted street itself, and there was "no visible use of any of the platted streets" other than a gravel road leading to a house); Sioux City v. Johnson, 165 N.W.2d at 767 (holding that evidence that vehicular and pedestrian traffic had never existed on platted street, that the city had never attempted to "grade, improve, or open" the street, and that the trees, grass, and shrubs which were growing on the street were mere evidence of non-use, insufficient to demonstrate abandonment); see also Town of Marne v. Goeken, 147 N.W.2d 218, 223 (Iowa 1966) (holding that, where vehicular travel in an alley was "very rare" and the town had "neglected to mow the weeds or plow out the snow," there was "nothing to establish relinquishment of permanent control or ownership"). Based on the above, plaintiffs have, therefore, failed to establish, for the purposes of their present motion, that the portions of Foote Street adjacent to Claims 2, 4, and 5 have been abandoned by the town of Farragut.

Plaintiffs also allege that the town of Farragut has vacated the portion of Foote Street adjacent to Claim 2. Under Iowa law, municipalities such as Farragut have the power to vacate streets within their jurisdiction. See Iowa Code § 306.10 (2011) ("In the construction, improvement, operation or maintenance of any highway, or highway system, the agency which has control and jurisdiction over such highway or highway system, shall have power, on its own motion, to alter or vacate and close any such highway or railroad crossing thereon . . . ."); id. § 403.12(1)(g) (2011) ("For the purpose of aiding in the planning, undertaking or carrying out of an urban renewal project located within the area in which it is authorized to act, any public body may, upon such terms, with or without consideration, as it may determine: . . . Furnish, dedicate, close, vacate, pave, install, grade, regrade, plan or replan streets, roads, sidewalks, ways or other places."); see also Walker v. City of Des Moines, 142 N.W. 51, 52 (Iowa 1913) ("[T]he Legislature has authorized the city council, by ordinance, to withdraw a street or alley from such public use by vacating it." (citing Iowa Code § 751 (date unspecified))). Vacating a street, however, is a formal act, requiring a municipality to go through a number of procedural steps and issue a final order. See Iowa Code § 306.11 (2011) (hearing required before vacation); id. §§ 306.12-.13 (2011) (notice of hearing required); id. § 306.16 (2011) (a final order vacating the road must be entered and filed with the county auditor). There is no evidence in the record before this court that the town of Farragut, or any other governmental body, ever provided notice of a hearing, held a hearing, or issued a final order vacating the portion of Foote Street at issue before the court.

In support of their argument, plaintiffs, instead, claim that the current tax assessor's map depicts the portion of Foote Street adjacent to Claim 2 as having been vacated. On the current tax assessor's map, Claim 1, which is comprised of Lots 15 and 16 and the adjacent portion of Foote Street, is immediately to the west of Claim 2, which is comprised

of Lots 75, 76, and 77.[14] On the current tax assessor's map, the portion of Foote Street included in Claim 1 is divided from the rest of Foote Street with two lines which continue from the edges of Lots 16 and 17, cross Foote Street, and end at the railroad corridor. This marked portion of Foote Street is denoted with the words "FOOTE vac." (capitalization in original). The parties agree that this and other portions of Foote Street specifically annotated as "vac." on the current tax assessor's map have been vacated by the town of Farragut. Although not discussed by the parties, to the east of Claim 2 there is another portion of what was previously Foote Street, adjacent to Lots 103 and 183, that is divided from the rest of Foote Street, with lines that continue from the west edge of Lot 103 and the east edge of Lot 183 down to the railroad corridor. Similar to the portion of Foote Street included in Claim 1, this divided-off portion of Foote Street adjacent to Lots 103 and 183 is clearly marked "Vac. ST." (capitalization in original). By contrast, the portion of Foote Street adjacent to Claim 2 shown on the current tax assessor's map, which runs diagonally from southwest-northwest, is not divided-off from the two north-south streets which intersect it and surround Claim 2. Nor is this portion of Foote Street labelled in any way. Additionally, the portion of Foote Street to the east of the vacant

---

[14] Below is a reproduction of the portion of the current tax assessor's map depicting Claims 1 and 2. The map was provided by the defendant as an exhibit to its proposed findings of uncontroverted fact. The court has removed two annotations that were digitally added by the defendant, but the document is otherwise unaltered.



portion of Foote Street, adjacent to parcels 103 and 183, is not divided from the north-south streets intersecting and is simply labeled "FOOTE ST."[15] (capitalization in original).

The "vac." and "Vac." labels on the portions of Foote Street adjacent to Claim 1 and parcels 103 and 108 are clear indications that the town of Farragut has vacated those portions of Foote Street. The absence of any similar "vac." label on the portion of Foote Street adjacent to Claim 2, suggests that, unlike for the portions of Foote Street adjacent to Claim 1 and parcels 103 and 108, the tax assessor's map intends to depict the portion of Foote Street adjacent to Claim 2 as not having been vacated. Furthermore, because the portion of Foote Street at issue also is divided from the two vacated portions of Foote

---

[15] Below is a reproduction of the portion of the current tax assessor's map depicting the portion of Foote Street to the east of Lots 103 and 183. The map was provided, as it appears below, by the defendant as an exhibit to its proposed findings of uncontroverted fact.



Street and continues to connect, without dividing lines, to other city streets, in a similar manner to the unvacated portion of Foote Street to the east of parcels 103 and 108 there is insufficient support for the court to find that the current tax assessor's map depicts the portion of Foote Street adjacent to Claim 2 as definitively having been vacated. Plaintiffs, therefore, have failed to demonstrate that the portion of Foote Street adjacent to Claim 2 has been formally vacated.[16]

Even were the court to find that the town of Farragut had formally vacated the portion of Foote Street abutting Claim 2, this would not necessarily make Claim 2 adjacent to the corridor. Although plaintiffs never spell out their logic, their argument appears to assume that, had Foote Street been vacated, ownership of the land comprising Foote Street would have automatically passed to adjacent landowners, such as the plaintiff-owners of Claim 2. As stated above, however, under Iowa law, the town of Farragut was the owner of all of Foote Street in fee simple. Had Farragut formally vacated a portion of Foote Street, that portion would no longer be a public road, but Farragut would continue to own the land on which the road was previously located.[17] See Walker v. City of Des Moines, 142 N.W. at 52 ("When continued as a street, the city could not divert it to other uses; but having effected its vacation the title, freed from the trust, continues in the city, and it may convey the ground vacated to another, to be used for private purposes." (citations omitted)); id. at 53 ("If properly vacated, the city may devote the ground to whatever legitimate purpose it may elect, or otherwise dispose of the same."). If vacated, the town of Farragut would have the right to sell or transfer the vacated portions of Foote Street to the adjacent landowner or to anyone else. To make such a sale or transfer, however, Farragut would have had to follow the same process it would have been required to follow to dispose of any other real property, including promulgating a

---

[16] In their motion for partial summary judgment, plaintiffs initially asserted that all of Foote Street was formally vacated by the town of Farragut, presumably including the portions adjacent to Claims 4 and 5, as well as those adjacent to Claim 2. Plaintiffs did not provide any explanation for why this was so, but merely cited versions of the current tax assessor's map that they had attached to the motion. After defendant filed its proposed statement of uncontroverted facts, which included a fuller and more legible version of the portion of the tax assessor's map relating to Claims 4 and 5, plaintiffs appear to have dropped their vacation argument as it related to the portions of Foote Street adjacent to Claims 4 and 5, arguing, instead, only that "Foote Street has actually been formally vacated adjacent to parcels [Claims] 1 and 2 and has been abandoned for the entire length." A review of the tax assessor's map provided by defendant supports plaintiffs' choice to do so. The map labels the portion of Foote Street adjacent to Claims 4 and 5 in the same way it does all other streets, simply as "FOOTE ST.," with no indication that it had been vacated. Thus, there is no evidence in the record that the portion of Foote Street adjacent to Claims 4 and 5 has been formally vacated by the town of Farragut.

[17] By contrast, if the town merely had held an easement in Foote Street, the street would have become the private property of its original owner upon vacation. See Schaller v. State, 537 N.W.2d 738, 742 (Iowa 1995) ("Once a county vacates a road, the easement is lost, and exclusive possession is restored to the original owner." (citing 39 Am. Jur. 2d Highways, Streets, and Bridges § 142, at 184 (1968))).

resolution, publishing a notice of the resolution, and holding a public hearing. See Iowa Code § 364.7 (2011). With respect to the portion of Foote Street adjacent to Claim 2, there is no evidence in the record before this court that such procedures ever were followed, or that anyone other than the town of Farragut ever has owned the portion of Foote Street adjacent to Claim 2. In fact, there is evidence in the record that the plaintiff-owner of Claim 2, unlike the plaintiffs-owners of Claim 1, does not own any portion of Foote Street. Whereas the deed for Claim 1 describes the property as "Lots 16 and 17, and all that part of Foote Street lying adjacent to and abutting Lot 17, in the Town of Farragut, Fremont County, Iowa, according to the recorded Plat thereof," (emphasis added), the deed for Claim 2 makes no mention of Foote Street, simply describing the property at issue as "Lots Seventy-five (75), Seventy-six (76), and Seventy-seven (77) in the town of Farragut, Fremont County, Iowa." Plaintiffs, thus, have failed to demonstrate that anyone other than the town of Farragut owns the portion of Foote Street adjacent to Claim 2, regardless of whether the portion has been formally vacated.

There is no evidence in the record before the court that shows that the portions of Foote Street abutting Claims 2, 4, and 5 have been held other than in fee simple by the town of Farragut since the time of its incorporation in 1871. Plaintiffs have failed to demonstrate that the town of Farragut has ever relinquished ownership of these portions through abandonment or vacation. Foote Street, thus, continues to separate Claims 2, 4, and 5 from the railroad corridor. As a result, with respect to Claims 2, 4, and 5, plaintiffs' motion for partial summary judgment must be denied and defendant's cross-motion granted.

Unlike for Claims 2, 4, and 5, the properties that comprise Claims 8 and 9 were not part of the original plat map of the town of Farragut. Instead, the parcel from which Claims 8 and 9 both are derived was first platted in the map of U.D. Coy's First Addition to the Town of Farragut, which was recorded in 1872. In particular, the deeds for Claims 8 and 9 state that they are comprised of portions of "Lot 13 of U.D. Coy's First addition to the Town of Farragut." Neither Cox Street, nor any other street between Lot 13 and the corridor is depicted in the plat map of U.D. Coy's First Addition to the Town of Farragut. Nor is there any other evidence in the record before the court that Cox Street is now, or ever was, owned by the town of Farragut. Further, it is undisputed that the deeds for both Claims 8 and 9, dated February 18, 2000 and July 28, 2004, respectively, both state that the claims extend to the edge of the railroad corridor, which would include Cox Street. Thus, there is some evidence in the record that Claims 8 and 9 include Cox Street, and are adjacent to the corridor.

On the other hand, there is evidence, in the form of the current tax assessor's map, that an intervening parcel may separate Claims 8 and 9 from the railroad corridor. The current tax assessor's map depicts a tract of land, which defendant calls the ".002" Parcel, that appears to have been separated-out from the northernmost quarter of the railroad corridor. There is no cognizable evidence in the record about the ownership of the .002 Parcel.[18] Because the .002 Parcel appears to have once been a portion of the railroad

_____

[18] Plaintiffs argue in their supplemental submission following oral argument addressing Claims 8 and 9 that "based on further conversations with the County Assessor, there is

corridor, its existence as an intervening parcel between Claims 8 and 9 and the current railroad right-of-way would not necessarily be inconsistent with the descriptions in the deeds for Claims 8 and 9. Should the .002 Parcel turn out to be a distinct parcel, owned by a third party, plaintiffs' allegations related to Claims 8 and 9, however, would fail due to lack of adjacency. The possible existence of the .002 Parcel, thus, presents an issue of material fact regarding the adjacency of Claims 8 and 9 to the railroad corridor.[19] As a result, the court denies summary judgment for either party with respect to Claims 8 and 9.

## BNSF's Interest in the Railroad Corridor Adjacent to Claims 1, 2, 4, and 5

The court turns next to the nature of the property interest held by the BNSF in the portion of the railroad corridor adjacent to Claims 1, 2, 4, and 5. As noted above, the court has found that, as a matter of law, intervening parcels prevent Claims 2, 4, and 5 from adjoining the railroad corridor. Thus, plaintiffs' allegations regarding those three claims fail, regardless of BNSF's interest in the corridor itself. By contrast, the parties in the above-captioned case agree that Claim 1 is adjacent to the railroad corridor. Regarding Claim 1, the question before the court is the nature of the interest that the deed that pertains to the segment of the railroad corridor adjacent to Claim 1 conveyed to BNSF's predecessor-in-interest. Specifically, the parties dispute whether the C/544 deed conveyed a fee simple interest to BNSF's predecessor-in-interest or an easement for railroad purposes. Defendant argues that "[h]ere, the deed recorded at Book C, page 544 conveys fee title to BNSF's predecessor-in-interest, because the granting clause conveys a tract of land, rather than a right-of-way." Plaintiffs, however, argue that the "railroad held an easement limited to railroad purposes over Plaintiffs' land and nothing more." Plaintiffs also indicate that, "Iowa law is clear that by granting land to be used as a right-of-way, only a railroad purposes easement is acquired by the railroad." According to plaintiffs, the C/544 deed "should be an easement for railroad purposes under Iowa law . . . because it

_____

no intervening parcel .002." While this may or may not be true, plaintiffs' attorneys' description in a legal brief of an alleged conversation that some unnamed person held with the county assessor is not cognizable evidence. See Gemtron Corp. v. Saint-Gobain Corp., 572 F.3d 1371, 1380 (Fed. Cir. 2009) ("Saint–Gobain's unsworn attorney argument . . . is not evidence and cannot rebut the video and other admitted evidence concerning Saint–Gobain's manufacturing process." (citing Laitram Corp. v. Cambridge Wire Cloth Co., 919 F.2d 1579, 1583 (Fed. Cir. 1990) (criticizing parties' "reliance on attorney argument and counsel's unsworn fact statements as 'evidence'"))); In re Budge Mfg. Co., Inc., 857 F.2d 773, 776 (Fed. Cir. 1988) (finding statements made by attorney should be considered as "no evidence").

[19] Plaintiffs also argue, with respect to the possible existence of the .002 Parcel, that "assessor maps are not legally reliable for ownership documentation regarding the parameters of a parcel, but rather are for tax purposes." Not only do plaintiffs fail to provide any legal support for this argument, but seemingly in contradiction to this claim, the court notes that the current tax assessor's map is the only piece of evidence plaintiffs rely on for their argument regarding the vacation of Foote Street.

was obviously the grantor's intent to grant an easement." The parties do not dispute the transcription of the original deed, which states:

> In consideration of the payment of one Dollar I, John N. Dennison Trustee of Boston __ by C. E. Perkins of Burlington Iowa my attorney in __ hereby sell and convey to the Burlington and Missouri River Railroad Company the following described Real Estate in Fremont County Iowa to wit: Commencing at the intersection of the center line of the main track of the Red Oak and Nebraska City Branch of the Burlington and Missouri River Railroad as now located and built and the north line of the southwest quarter of section seven (7) township sixty eight (68) North Range forty (40) west of the fifth (5th) principal meridian. Thence east to a point in said north line of fifty (50) feet distant at right angle from said center line. Thence southwesterly parallel to said center line and fifty (50) feet distant therefrom to the west line of section seven (7). Thence north to a point on said west line fifty (50) feet distant at right angles from said center line and on the northside thereof. Thence northwesterly parallel to said center line and fifty (50) feet distant therefrom eight hundred and seventy nine and six tenths (879 6/10) feet. Thence north one hundred and twelve and fife [sic] hundredths (112 5/11 [sic]) feet. Thence northeasterly parallel to said center line and one hundred and fifty (150) feet distant therefrom nine hundred and sixty three and six tenth (963 6/10) feet. Thence south one hundred and twelve and five hundredths (112 5/100) feet. Thence northeasterly parallel to said center line and fifty (50) feet distant therefrom to the said north line of the southwest quarter of section seven (7). Thence east along said north line to the place of beginning. Being the Depot grounds and Right of Way at the town of Farragut as shown on the recorded files of said town. And I warrant the title thereto against the lawful claims of all persons whomsoever. Claiming by __ under __. Witness my hand this 2nd day of March A.D. 1894[.]

According to Iowa law, "[e]very conveyance of real estate passes all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." Iowa Code § 557.3 (2011); see also Hawk v. Rice, 325 N.W.2d 97, 99 (Iowa 1982). The grantor's intent is controlling, and it is ascertained by applying general contract principles. See Hawk v. Rice, 325 N.W.2d at 99 (citing Flynn v. Michigan-Wisconsin Pipeline Co., 161 N.W.2d 56, 64-65 (Iowa 1968); see also Burgess v. United States, 109 Fed. Cl. 223, 228 (2013) (explaining that "Under Iowa law, deeds are interpreted according to the ordinary rules of contract construction" (citing Weigmann v. Baier, 203 N.W.2d 204, 206 (Iowa 1972))). The omission of any limiting language in the granting or habendum clauses of a deed conveying real estate is significant under Iowa law. See Burgess v. United States, 109 Fed. Cl. at 228 (citing Iowa Code § 557.3). With regard to property interests conveyed to railroad companies, a court examines a deed's language to determine whether the grantor's intent was to convey a right-of-way easement for railroad purposes or to convey land in fee simple to a railroad company. See Lowers v. United States, 663 N.W.2d 408, 411 (Iowa 2003). Although the Iowa Supreme Court had previously held that a deed that specifically conveyed land "for uses connected with

27

construction and operation of a railroad" conveyed "an easement rather than a fee," in Lowers v. United States, the Iowa Supreme Court "re-examine[d] the logic underlying those conclusions" and held that "the reference in the deed to the use of the property for railroad purposes does not diminish the conveyance of all right, title, and interest of the grantor." Id. (citing Atkin v. Westfall, 69 N.W.2d 523, 525 (Iowa 1955); Keokuk County v. Reinier, 288 N.W. 676, 678 (Iowa 1939)). Thus, according to the Iowa Supreme Court, language in a deed referencing the use of property for railroad purposes may not, by itself, be sufficiently limiting so as to conclude that the deed is a conveyance of a right-of-way easement and not a conveyance of the grantor's entire right, title, and interest in the property. See id. Instead, "there must be some reference to right-of-way in the language defining the interest being conveyed" for the court to presume that a conveyance for a right-of-way is only an easement. Id.

The parties do not dispute, under Iowa law, that every conveyance of real estate passes all of the grantor's interest unless a contrary intent reasonably can be inferred from the language used. The crux of the parties' dispute concerning the C/544 deed is whether it contains limiting or qualifying language so as to limit the conveyance to a right-of-way easement to the railroad, instead of a conveyance of all of the grantor's interest. Plaintiffs argue that "longstanding precedent from the Iowa Supreme Court" holds that "a conveyance to the railroad through a deed granting a strip of land for a right-of[-]way for the purpose of constructing a railroad only conveys an easement for railroad purposes." According to plaintiffs, "Iowa law is clear that by granting land to be used as a right-of-way, only a railroad purposes easement is acquired by the railroad." Plaintiffs also argue that the grant or gift of ground for a right-of-way is presumed to be an easement only, according to the Iowa Supreme Court. To support its position, plaintiffs cite to three cases decided in Iowa that involved conveyances to railroads, Hawk v. Rice, 325 N.W.2d 97, as well as Macerich Real Estate Co. v. City of Ames, 433 N.W.2d 726, 729 (Iowa 1988), and Estate of Rockafellow v. Lihs, 494 N.W.2d 734, 736 (Iowa Ct. App. 1992). Plaintiffs argue that the deeds at issue in these cases are comparable, and, thus, instructive, to interpreting the C/544 deed. In Hawk v. Rice, the Iowa Supreme Court reviewed a granting clause, which provided that the grantor did

> grant, sell and convey to the said Toledo and Northwestern Railway, its successors and assigns, for the purpose of constructing a Railroad thereon, and for all uses and purposes connected with the construction and use of said Railroad, the right of way for the said Railroad over and through the [described tract] . . . .

Hawk v. Rice, 325 N.W.2d at 98 (ellipse and brackets in original). Additionally, the habendum clause to the deed in the Hawk case stated that the railroad was to have, hold and enjoy the land "for any and all uses and purposes in any way connected with the construction, preservation, occupation and enjoyment of the said Railroad." Id. In Hawk v. Rice, the Iowa Supreme Court held that the language in the granting clause and the habendum clause conveyed an easement only. See id. at 100.

In Estate of Rockafellow v. Lihs, 494 N.W.2d at 735-36, the Iowa Court of Appeals relied upon the Iowa Supreme Court's decision in Hawk v. Rice and concluded that the

disputed deed only created an easement for railroad purposes. In <u>Estate of Rockafellow v. Lihs</u>, the granting clause of the deed stated that the grantor did

> give, remise, release, convey, and quitclaim to the said Burlington, Cedar Rapids & Minnesota Railway Company for the purpose of constructing a railroad thereon and for all purposes connected with the construction and use of the said railroad the right-of-way for the said road over and through the . . . described tract. . . .

<u>Id.</u> at 735 (ellipses in original). The Iowa Court of Appeals explained in <u>Estate of Rockafellow v. Lihs</u> that "[s]imilar language has been held in a long line of cases to convey an easement only." <u>See id.</u> at 736.

In <u>Macerich Real Estate Co. v. City of Ames</u>, the Iowa Supreme Court, citing its earlier decision in <u>Hawk v. Rice</u>, also held that two deeds conveyed to the railroad only an easement for railroad purposes. <u>See</u> <u>Macerich Real Estate Co. v. City of Ames</u>, 433 N.W.2d at 727-28. The first of the two deeds in <u>Macerich Real Estate Co. v. City of Ames</u>, the Black deed, stated:

> In consideration of the sum of $10.00, the receipt of which is hereby acknowledged, Isaac Black and E.M. Black, his wife, hereby sell and convey to the Iowa & Minnesota Railway Company the right-of-way 100 feet in width for a single or double railroad track, as the same is located through the following lands, to-wit:

> The Northwest Quarter of the Northwest Quarter of Section 11, Township 83, Range 24, said lands being situated in the County of Story, State of Iowa and we, the said Isaac Black and E.M. Black, his wife, warrant the title against all persons whomsoever. In witness whereof, we have hereunto signed our names this 21st day of August, 1866.

<u>Id.</u> at 727. The second of the deeds in <u>Macerich</u>, the Hoggatt deed, stated:

> File for record March 20, 1874, at 2 o'clock p.m., Iowa & Minnesota Railway Company in consideration of the sum of $10.00, the receipt which is hereby acknowledged L.P. Hoggatt and Abigal Hoggatt, his wife, hereby sell and convey to the Iowa & Minnesota Railway Company the right-of-way 100 feet in width for a single or double railroad track as the same is located through the following lands, to-wit:

> 34 acres in the Northeast Quarter of Section 10, Township 83, Range 24, and said lands being situated in the County of Story and State of Iowa, and the said L.P. Hoggatt and Abigal Hoggatt, his wife, warrant the title against all persons whomsoever.

> In witness whereof, we have hereunto signed our names this 21st day of August, 1866.

Id. at 727-28.

Plaintiffs attempt to compare the language in the deeds in these three cases to the language in the C/544 deed in order to persuade this court to adopt the same interpretation and conclude that the C/544 deed conveyed only an easement. Plaintiffs argue that, like the deeds in Hawk, Estate of Rockafellow, and Macerich, the C/544 deed included limiting language and conveyed a right-of-way for railroad purposes, which, under Iowa law, should lead to a finding that only an easement was conveyed. Defendant argues, however, that the C/544 deed is distinguishable from the deeds in Hawk, Estate of Rockafellow, and Macerich because the deeds in those cases contained granting clauses that conveyed rights-of-way and the granting clause in the C/544 deed does not reference a right-of-way or contain any limiting language, and, that, as a result, the C/544 deed cannot be construed as conveying an easement. According to defendant, under Lowers v. United States, which was decided by the Iowa Supreme Court after Hawk, Macerich, and Estate of Rockafellow, in order to establish an easement, "'there must be some reference to right-of-way in the language *defining the interest being conveyed*,'" which, according to defendant, requires that any reference to a right-of-way must be in the deed's granting clause. (emphasis in original). Plaintiffs argue, however, that the deed in Lowers was "not on all fours with the deed at issue here," and, as a result, the decision in Lowers is not dispositive in the above-captioned case.

In Lowers v. United States, the Iowa Supreme Court considered whether a deed conveyed an easement or a defeasible fee to a railroad. See Lowers v. United States, 663 N.W.2d at 410-11. In Lowers, the deed at issue was titled "Rt. Of Way Deed" and stated that the grantors did

> grant and convey unto said Railroad Company, the following piece or tract of land in Cass County, in the State of Iowa, and particularly described as follows to wit: [section coordinates] One hundred feet in width, having fifty feet on each side of the center line of line of the Road of said Company, as located by the engineer of said Railroad Company for the construction of said Railroad in said Cass County; to Have and Hold the same unto said Railroad Company forever; Provided that in case said Railroad Company does not construct their road through said tract, or shall, after construction, permanently abandon the route through said tract of land the same shall revert to, and become the property of the grantors, their heirs or assigns. And the said [grantor] hereby relinquishes her right of dower in the tract herein conveyed.

Id. at 410 (brackets in original). The Iowa Supreme Court determined that this deed conveyed to the railroad a defeasible fee, and not an easement for a right-of-way. See id. In its decision, the court explained that "the reference in the deed to the use of the property for railroad purposes" does not "diminish the conveyance of all right, title, and interest of the grantor." Id. at 411. The Iowa Supreme Court specifically found that "the fact that the deed bore a caption or title indicating 'Rt. of Way Deed'" did not "serve to limit the interest conveyed in the body of the deed." Id. Indeed, the Lowers court explained that, in order for a court to presume that a conveyance for a right-of-way only grants an easement,

"there must be some reference to right-of-way in the language defining the interest being conveyed." <u>Id.</u>; <u>see also</u> <u>Rasmuson v. United States</u>, 109 Fed. Cl. at 273 ("[T]he <u>Lowers</u> court found that there must be language expressly limiting the conveyance if the deed is to grant any interest less than a fee." (citing <u>Lowers v. United States</u>, 663 N.W.2d at 411)).

In the above-captioned case, defendant argues that the <u>Lowers</u> decision requires that, in order to be construed as an easement, a deed's granting clause must refer to a right-of-way, and that the C/544 deed's granting clause did not refer to a right-of-way, but, instead, conveyed "*real estate*" to BNSF's predecessor. (emphasis in original). Defendant would have this court conclude that the language in the <u>Lowers</u> decision explaining that the right-of-way must be referred to in the "interest being conveyed" creates a requirement that the right-of-way must be referred to in the granting clause of a deed in order for a court to find that the conveyance is an easement. Defendant argues that there was no reference to a right-of-way in the granting clause in the C/544 deed, therefore, the right-of-way language elsewhere in the deed did not define the interest conveyed in the C/544 deed. According to defendant, the C/544 deed's granting clause conveyed "the ***following described Real Estate*** in Fremont County, Iowa to wit . . . ." (emphasis and ellipsis in original). Defendant argues that the subsequent right-of-way language in the deed merely pertained to the use of the land and had no impact on the interests conveyed to BNSF's predecessor-in-interest. Defendant contends that the deed conveyed fee title to BNSF's predecessor-in-interest because the granting clause in the C/544 deed conveyed "*real estate.*" (emphasis in original).

Despite defendant's argument that the <u>Lowers</u> decision requires that a deed must reference a right-of-way in its granting clause in order to convey an easement, the Iowa Supreme Court in <u>Lowers</u> considered both the granting clause and the habendum clause in determining whether the deed in that case conveyed an easement or a defeasible fee. <u>See</u> <u>Lowers v. United States</u>, 663 N.W.2d at 411. In explaining its decision, the Iowa Supreme Court also cited two previous decisions in which the court found that a fee simple was conveyed because the relevant deeds "made no reference to right-of-way in either the granting clause or the *habendum* clause." <u>Id.</u> (emphasis in original) (citing <u>McKinley v. Waterloo R.R. Co.</u>, 368 N.W.2d 131 (Iowa 1985); <u>Des Moines Ry. Co. v. City of Des Moines</u>, 159 N.W. 450 (Iowa 1960)). Accordingly, the requirement stated in <u>Lowers</u> that "there must be some reference to right-of-way in the language defining the interest being conveyed," <u>id.</u>, does not limit this court's review to a deed's granting clause, but necessitates a review of the entire deed.

As described above, the C/544 deed provided that the grantor did "hereby sell and convey to the Burlington and Missouri River Railroad Company the following described Real Estate in Fremont County Iowa to wit: . . . . [legal description]. Being the Depot grounds and Right of Way at the town of Farragut as shown on the recorded files of said town." Of note, the C/544 deed appears not to have included a habendum clause. As plaintiffs assert, the language in the C/544 deed is similar to the language in the <u>Hawk</u>, <u>Macerich</u>, and <u>Estate of Rockafellow</u> deeds, in which the Iowa Supreme Court and Court of Appeals concluded that easements, not fee interests, were conveyed. <u>See</u> <u>Hawk v. Rice</u>, 325 N.W.2d at 98; <u>Macerich Real Estate Co. v. City of Ames</u>, 433 N.W.2d at 729; <u>Estate of Rockafellow v. Lihs</u>, 494 N.W.2d at 736. Each of the deeds in <u>Hawk</u>, <u>Macerich</u>,

and <u>Estate of Rockafellow</u> specifically referred to a right-of-way and the conveyance of specific property in the language of the deed and found an easement for railroad purposes only. <u>See</u> <u>Hawk v. Rice</u>, 325 N.W.2d 97; <u>Macerich Real Estate Co. v. City of Ames</u>, 433 N.W.2d at 729; <u>Estate of Rockafellow v. Lihs</u>, 494 N.W.2d at 736; <u>see also</u> <u>Notelzah, Inc.</u> <u>v. Destival</u>, 489 N.W.2d 744 (Iowa 1992); <u>Brugman v. Bloomer</u>, 13 N.W.2d 313 (Iowa 1944). Notwithstanding defendant's arguments, Iowa law does not appear to prescribe a strict formula as to how a right-of-way must be written into a deed in order to successfully convey an easement. <u>Hawk</u>, <u>Macerich</u>, <u>Estate of Rockafellow</u>, and the above-captioned case are distinguishable from the deed in <u>Lowers</u>, which did not make any reference to a right-of-way in the language of the deed. <u>See</u> <u>Lowers v. United States</u>, 663 N.W.2d at 411. Although the deed in <u>Lowers</u> was titled "Rt. of Way Deed," the Iowa Supreme Court held that this title alone was not sufficient to limit the interest conveyed in the deed to an easement. <u>See id.</u> Unlike in <u>Lowers</u>, in the above-captioned case, the C/544 deed specifically explained the described real estate as "Being the Depot grounds and <u>Right of Way</u> at the town of Farragut." (emphasis added). Additionally, the C/544 deed described the right-of-way in relation to the "intersection of the center line of the main track of the Red Oak and Nebraska City Branch of the Burlington and Missouri River Railroad" and repeatedly referred to the "center line" in the land description. The Iowa Supreme Court and this court have previously determined that such language in an Iowa deed describing a right-of-way to a railroad grants an easement only for railroad purposes. <u>See</u> <u>Rasmuson v. United States</u>, 109 Fed. Cl. at 279 (discussing the Burchinal deed, one of the multiple deeds at issue in the case); <u>Macerich Real Estate Co. v. City of Ames</u>, 433 N.W.2d at 729; <u>Hawk v. Rice</u>, 325 N.W.2d at 99-100; <u>Estate of Rockafellow v. Lihs</u>, 494 N.W.2d at 736.

Although defendant argues that the deed at issue in the above-captioned case was a conveyance of fee title because of the use of the term "real estate" in the granting clause, Iowa law does not mandate deeds mentioning "real estate" to be considered fee deeds. Moreover, defendant's approach ignores that the property description includes the phrase "Being the Depot grounds and Right of Way at the town of Farragut." Also, in arguing that "other judges of the CFC [Court of Federal Claims] have held that conveyances of 'land,' 'real estate,' and 'premises,' convey fee title under Iowa law" defendant relies on cases which are distinguishable from the above-captioned case. Specifically, defendant cites to <u>Rasmuson v. United States</u>, 109 Fed. Cl. at 273, for the proposition that a granting clause conveying "land" or "real estate" conveys fee title.[20] Defendant's characterization of <u>Rasmuson</u> is incorrect. In <u>Rasmuson</u>, a judge of this court concluded that eight deeds conveying specified tracts of land granted fee interests to a railroad and not easements. In arriving at its determination, however, the court considered whether the deeds used "any limiting language" or the term right-of-way "in the body of the text" and found that they did not. <u>Id.</u> at 278. The absence of any limiting language or use of the term right-of-way was cited as a specific reason supporting the court's conclusion that those deeds conveyed fee interests. <u>See id.</u> The <u>Rasmuson</u> decision cited

---

[20] The court notes that the page numbers listed by defendant in the table of authorities for defendant's cross-motion for partial summary judgment for <u>Rasmuson</u>, and other cases cited by defendant in its motion, are incorrect.

the Iowa Supreme Court's decision in <u>Lowers</u> for the proposition that there must be some reference to right-of-way in the language defining the interest being conveyed in order for the deed to convey an easement. <u>See id.</u> at 273.

In further support of defendant's position that the use of the term "real estate" in the C/544 deed's granting clause conveyed a fee interest under Iowa law, defendant also cites <u>Burgess v. United States</u>, 109 Fed. Cl. at 234, and <u>Jenkins v. United States</u>, No. 09-241L, 2013 WL 490995 (Fed. Cl. Feb. 8, 2013).[21] The relevant deeds in <u>Burgess</u> did not use "limiting language in the granting or habendum clauses that describes the property conveyed as a 'right of way' or which limits in any other way the estate conveyed." <u>Burgess v. United States</u>, 109 Fed. Cl. at 232. Additionally, the court in <u>Burgess</u> found that the habendum clause in the deeds in that case included "a series of warranties more typical of a transfer of a fee" and employed "broad conveyance language" granting a "'narrow strip of land,'" "'with all the appurtenances.'" <u>Id.</u> at 233. The C/544 deed in the above-captioned case is distinguishable from the deed in <u>Burgess</u>, in part, because it did not include such warranties or convey the property with all the appurtenances. Defendant further argues that, in <u>Jenkins v. United States</u>, the court held "a fee conveyance in the granting of 'depot grounds,'" however, this is an unequivocal misstatement of that case. In <u>Jenkins</u>, when reviewing plaintiffs' motion for reconsideration, the court considered the law of merger when a railroad that first acquires an easement subsequently acquires a fee interest in the same property. <u>See</u> <u>Jenkins v. United States</u>, 2013 WL 490995, at *2. Although the <u>Jenkins</u> court did find, as defendant states, that the railroad acquired the corridor in fee when it acquired the depot grounds, defendant ignores the basis for that statement, which is that the railroad became the fee owner in the corridor, over which it previously had an easement, when it later purchased the depot grounds together with the corridor. <u>See id.</u> The facts of <u>Jenkins</u> are markedly distinct from the facts in the above-captioned case, and defendant's reliance on <u>Jenkins</u> is clearly misplaced. Because under Iowa law, "[e]very conveyance of real estate passes all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used," Iowa Code § 557.3, and the deeds in <u>Rasmuson</u> and <u>Burgess</u> did not contain any such limiting language, these cases are not inconsistent or incongruous with the finding of this court that the C/544 deed in the above-captioned case conveyed an easement and not a fee interest to BNSF's predecessor-in-interest. The court, therefore, finds that the portion of the railroad corridor adjacent to Claim 1, which was conveyed to BNSF's predecessor-in-interest through the C/544 deed, was held by BNSF only as an easement for railroad purposes.

## The Nature of the Taking at Issue

With regard to the claims adjoining segments of the railroad corridor for which the railroad held only easements for railroad purposes, the defendant does not contest that it is liable for a taking, and that, therefore, partial summary judgment should be entered in favor of the plaintiffs. The parties agree that such claims include: Claims 11, 12, 13.B, 14,

---

[21] The court notes that <u>Jenkins</u> was issued as an unpublished opinion. Given that defendant cites to <u>Jenkins</u>, and <u>Jenkins</u> is an Iowa Rails-to-Trails case, the court, nonetheless, includes a discussion of <u>Jenkins</u> in this opinion.

15, 16.A, and 16.B. As discussed above, Claim 1 is also such a claim and there remains a question of fact as to whether Claims 8 and 9 are as well.

The parties disagree, however, as to the nature of the property interest that was taken by defendant. Defendant concedes that, with respect to the claims adjoining the railroad corridor, the STB's issuance of the NITU prevented the extinguishment of the easements for railroad purposes that otherwise would have occurred under Iowa law, effecting a taking. Defendant argues, however, that all that was taken by the issuance of the NITU was an easement for railroad purposes and, thus, that defendant's liability for the taking should be limited to the taking of an easement for railroad purposes. According to defendant, this is so because the NITU "does not mandate trail use, it merely preserves the railroad easement by preempting abandonment of the rail corridor." In support of this claim, the government points to the portion of the Trails Act which discusses interim use. See 16 U.S.C. § 1247(d). That provision states, in part:

> If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the Board shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use.

Id.

According to defendant, this provision does not authorize any specific type of use, or expand the scope of the railroad right of way, but merely states that interim use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." Id. Defendant argues that the "context and historical developments leading to the Trails Act" demonstrate that the purpose of the law was to preserve railroad corridors by preempting extinguishment of railroad easements and not by taking a new easement for recreational purposes. Defendant also argues that the language at the beginning of this section making the interim use contingent on the third party being "prepared to assume full responsibility . . . for any legal liability arising out of such transfer or use" means that it is the interim user, i.e., the future trail operator such as, potentially, INHF in the present case, and not the United States, who assumes any legal liability arising from the specific interim use employed. See id. Defendant acknowledges that its arguments have been rejected multiple times by judges of this court in cases involving Iowa law and circumstances similar to those in the present case. See Burgess v. United States, 109 Fed. Cl. at 239 (rejecting the government's "well-rehearsed argument" "that any easement it took was for railbanking purposes only, not for recreational trail uses"); Rhutasel v. United States, 105 Fed. Cl. 220, 231 (2012) ("[T]he Government's argument that it is only liable for taking of an easement for railroad purposes is misplaced . . . ."); Jenkins v. United States, 102 Fed. Cl. 598, 619 (2011) ("Where, as here, a trail use agreement has been consummated, the scope or extent of

the government's taking liability is not limited to railbanking only, but extends to all of the uses authorized by the NITU, including the recreational trail.").

Plaintiffs reject defendant's characterization of what was taken, arguing that defendant took plaintiffs' reversionary interests in the portions of corridor at issue, rather than a mere easement. Plaintiffs argue that these reversionary interests include the plaintiffs' "right to possession of their property unencumbered by any easement." Plaintiffs, citing Preseault I, 494 U.S. at 22, Preseault II, 100 F.3d at 1533, and Ladd v. United States, 630 F.3d at 1023-24, argue that defendant's argument is contrary to binding precedent, which, plaintiffs allege, holds that a "landowners' [sic] right to **unencumbered** use of his property that he holds in fee simple" is destroyed when "the Trails Act acts to eliminate the fee owner's reversionary interest in land by issuing a NITU that underlines recreational trail use." (emphasis in original). Plaintiffs also argue that defendant's argument that the interim user of the railroad corridor, rather than the government, assumes liability for any taking, is contrary to established law, under which, according to plaintiffs, "it is the mere **authorization** for such [interim] use by issuance of the NITU that amounts to the taking." (emphasis in original).

As discussed above, under Iowa law, when an easement for railroad purposes is abandoned, the land up to the center line of the corridor reverts to the adjacent landowners. See Chadek v. Alberhasky, 111 N.W.2d 297, 298 (Iowa 1961) ("Where there are different landowners on each side of an abandoned right of way, each is the owner to the center." (citing Brugman v. Bloomer, 13 N.W.2d 313, 314 (Iowa 1944))); see also Iowa Code § 327G.77. Therefore, in the present case, those plaintiffs whose parcels were adjacent to the portions of the railroad corridor in which BNSF only had an easement for railroad purposes held a reversionary interest in the adjacent portions of the corridor, at least up to the center line of the corridor. "A taking occurs when state law reversionary property interests are blocked." Ladd v. United States, 630 F.3d at 1024 (citing Caldwell v. United States, 391 F.3d at 1233-34; Barclay v. United States, 443 F.3d at 1374). The United States Court of Appeals for the Federal Circuit has held that "[t]he issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way." Caldwell v. United States, 391 F.3d at 1233-34 (emphasis in original); see also Barclay v. United States, 443 F.3d at 1374 ("Abandonment cannot occur until authorized by federal law, and the NITU precludes abandonment and the reversion that would follow if abandonment were consummated."). In its February 21, 2012 Petition for Exemption, the BNSF stated that it intended to abandon the railroad corridor at issue. Regardless of the government's intended use of the railroad corridor, the issuance of the NITU prevented BNSF's abandonment of the railroad corridor and deprived the plaintiffs of the vesting of their reversionary interests in the railroad corridor. See Ladd v. United States, 630 F.3d at 1035 ("Thus, the NITU forestalls or forecloses the landowners' right to unencumbered possession of the property."). It was, therefore, these reversionary interests, rather than mere easements, that the government took from plaintiffs when it issued the NITU.

The potential existence of future, non-federal, users of the railroad corridor does not, as defendant claims, alter this calculus. The government's issuance of the NITU was

the action that deprived plaintiffs of their reversionary rights and effected a taking. See Caldwell v. United States, 391 F.3d at 1234. The existence of future users, and the use to which they ultimately put the railroad corridor, may affect whether the government is liable for a temporary or permanent taking. For instance, if a trail use agreement is eventually reached between BNSF and INHF or another third party, "abandonment of the right-of-way is effectively blocked," and the taking would become permanent. Id. (citing Preseault II, 100 F.3d at 1552). "Alternatively, negotiations may fail, and the NITU would then convert into a notice of abandonment. In these circumstances, a temporary taking may have occurred." Id. While these circumstances may affect the extent of damages that plaintiffs are ultimately due as a result of defendant's taking, they cannot change the fact that it was the issuance of the NITU that resulted in the taking. See Ladd v. United States, 630 F.3d at 1025 ("The duration of the taking goes to damages, not to whether a compensable taking has occurred."). Therefore, the issuance of a NITU resulted in the taking of the reversionary interests of those plaintiffs whose properties were adjacent to the portions of the railroad corridor in which BNSF held an easement for railroad purposes. To the extent defendant's motion for partial summary judgment seeks to limit its liability to the taking of an easement, the motion is denied. With respect to Claims 1, 11, 12, 13.B, 14, 15, 16.A. and 16.B, which adjoin the portions of the railroad corridor held by BNSF as easements, plaintiffs' motion for partial summary judgment is granted.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**, and defendant's cross-motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The court holds that defendant took the property of plaintiffs David and Paula Brownlee (Claim 1), Virginia Farm Company (Claim 11), James and Gloria Dalrymple (Claim 12), Richard K., Roger, and Lisa Phipps (Claim 13.B), C.S. Johnson Family Limited Partnership (Claim 14), Dorothy Walter Trust (Claim 15), and Timothy and Shawna Dreyer (Claims 16.A. and 16.B) by operation of the Trails Act. The court further holds that the property interest taken from these plaintiffs by defendant consisted of their reversionary interests in the portions of the railroad corridor at issue, and not merely easements for railroad purposes. The court also holds that a question of fact remains regarding whether defendant took the properties of plaintiffs Jerry Lee Nicholas (Claim 8) and Jeremy T. and Jennifer L. McAllister (Claim 9). Additionally, because the court finds that defendant did not take their properties by operation of the Trails Act, the following plaintiffs are hereby **DISMISSED** from the above-captioned action: Monte Jay Moyer (Claim 2), Rita Foster (Claim 4), and Thomas A. Ingram and Amanda Hinds (Claim 5).

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**